**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Dahle SPARROW, Defendant-Appellant.**

**No. 72-1468.**

United States Court of Appeals, Tenth Circuit.

Dec. 29, 1972.

R. William Bradford, Salt Lake City, Utah, for defendant-appellant.

James F. Housley, Asst. U. S. Atty. (C. Nelson Day, U. S. Atty., Salt Lake City, Utah, on the brief), for plaintiff-appellee.

Before HILL, SETH and DOYLE, Circuit Judges.

HILL, Circuit Judge.

This is a direct appeal from a jury conviction on six counts of an indictment charging Sparrow and another with conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371; with fraud by wire, in violation of 18 U.S.C. §§ 1341 and 1343; and with transportation in interstate commerce of falsely made and forged securities, in violation of 18 U.S.C. § 2314. The co-defendant named in the indictment was tried in a separate trial and was acquitted on all counts of the indictment.

The scheme charged by the government had as its nexus the establishment by the two defendants of companies in Salt Lake City, Utah, and Scottsdale, Arizona. These businesses were established to provide certain services to corporations and corporate stockholders. To corporations, the service offered was that of locating missing stockholders, usually in the context of an undeliverable dividend. For stockholders, the service was that of investigating the factual status of corporations, usually limited to a determination of the continued existence of a corporation, under either its original name or in a merged or altered existence, and of the identity of the corporate officers. An additional service provided to stockholders was that of securing replacement stock certificates for stockholders whose original certificates had been destroyed, lost or were otherwise unavailable. The basis for commission of the offenses arose from an alleged commingling of these services offered by Sparrow.

The government contends that defendants, in fulfilling their stockholder-location service for two corporations, had acquired lists of stockholders with whom the corporations had lost contact and to whom they had been unable to forward dividend checks. Upon being told that certain of the stockholders had been located, the corporations disclosed to Sparrow the stock certificate numbers and the number of shares held by each of these stockholders. Having acquired this information, the government contends Sparrow then instituted the stock replacement service offered to stockholders who had lost their original certificate. The first step in this process was the obtaining of a lost securities bond.[1] Applications for lost securities bonds for four stockholders were submitted by Sparrow to the local agent of United States Fidelity and Guaranty Company in Scottsdale, and bonds were issued. It later was discovered both the signatures of the stockholders on the applications and the bank signature guarantee stamps, used to guarantee the signatures of those stockholders, were forged.

The bonds, when issued, were signed by a forged signature of each stockholder and were signed by Sparrow as witness; the signatures on three of the bonds were guaranteed with forged signature guarantee stamps. These bonds, together with forged affidavits as to lost securities, which Sparrow had notarized and which had the signatures fraudulently guaranteed, were taken by the co-defendant, Bill Green, and his brother, Don, an alleged co-conspirator, to Walker Bank and Trust Company, the transfer agent for the two corporations. Accompanying these documents were blank assignments purportedly executed by each of the stockholders. These also contained forged signatures guaranteed with the forged signature guarantee stamps. Relying on these documents, Walker Bank and Trust Company issued two substitute stock certificates. This stock was subsequently sold by the Greens and, according to the testimony of Don Green, the proceeds divided equally between Sparrow and Bill Green, with appellant's share being delivered to him by telegraphic money orders at various locations. Dividend checks payable

---

1. The lost securities bond is an indemnification bond issued by a surety in which the surety agrees to accept responsibility for any losses which may be incurred by a corporation by reason of its reissuance of a new stock certificate to replace a lost certificate.

to the named stockholders were also acquired by the co-defendant and were, with forged endorsements, ultimately deposited into Sparrow's bank account.

In defense, Sparrow testified on both direct and cross-examination concerning his prior convictions. He additionally testified that the payments received from the co-defendant were payments made pursuant to Green's purchase from him of a 20% interest in an invention he had developed. At trial he asserted the executed assignment of this interest had been taken by agents of the Federal Bureau of Investigation and had not been returned. Of his role in obtaining the lost securities bonds, Sparrow testified that he had submitted the completed applications on the strength of Bill Green's representation that the persons introduced to appellant at his Scottsdale office by the co-defendant were the true stockholders. He contends the evidence does not show that he knew any of the signatures on any of the various instruments to be forged. Sparrow maintained that all the subsequent dealings in the stock were conducted exclusively by the Greens, and that he was in no way associated with those subsequent transactions.

■ On appeal, Sparrow first maintains his conspiracy conviction under 18 U.S.C. § 371 must be reversed in view of the subsequent acquittal of Green, the only named co-defendant. He contends the conspiracy conviction cannot be sustained in the absence of proof of some concert of plan and purpose between two or more persons. Sparrow's conviction must be affirmed in view of additional untried co-conspirator named in the indictment, notwithstanding the acquittal of the only named co-defendant.[2]

■ Sparrow next asserts the extensive cross-examination conducted by the prosecution and permitted by the trial court as to his prior convictions was prejudicial. He contends the details of these prior convictions, when revealed to the jury, so inflamed the jury as to deny him trial by an impartial jury. Upon his voluntarily testifying on direct examination concerning his prior convictions, Sparrow simultaneously opened himself to relevant cross-examination on those facts.[3]

■ Sparrow next challenges his conviction under the counts charging interstate transportation of forged securities, first questioning whether the lost securities bonds were "securities" within the definition contained in 18 U.S.C. § 2311, and also questioning the sufficiency of evidence to establish his connection with any interstate transportation of the bonds. He contends the bonds lacked status as a security since they had no present intrinsic value as an evidence of existing indebtedness, but rather became possessed with value only upon the happening of a certain contingency. Upon that contingency occurring, that is, the wrongful obtaining of a duplicate stock certificate, the bonds then had value as an indemnification to the corporation that issued the duplicate certificate. Prior to obtaining anything of negotiable value, Sparrow points out, the holder of the bond first had to apply for and receive a substitute stock certificate. When this was issued to the named stockholder, it still had no value until an endorsement was signed by either the stockholder or a forger and that signature was satisfactorily guaranteed. Only then could the security be negotiated for value.

■ We distinguish the cases relied on by appellant on the facts of those cases.[4] In those cases, items not specifically enumerated in 18 U.S.C. § 2311,

2. United States v. Shuford, 454 F.2d 772 (4th Cir. 1971); Feldstein v. United States, 429 F.2d 1092 (9th Cir. 1970), cert. denied, 400 U.S. 920, 91 S.Ct. 174, 27 L.Ed.2d 159; Romontio v. United States, 400 F.2d 618 (10th Cir. 1968), cert. granted, 400 U.S. 901, 91 S.Ct. 144, 27 L.Ed.2d 137, cert. dismissed, 402 U.S. 903, 91 S.Ct. 1384, 28 L.Ed.2d 644.

3. See Sinclair v. Turner, 447 F.2d 1158 (10th Cir. 1971), cert. denied, 405 U.S. 1048, 92 S.Ct. 1329, 31 L.Ed.2d 590.

4. Beam v. United States, 364 F.2d 756 (6th Cir. 1966); Merrill v. United States, 338 F.2d 763 (5th Cir. 1964), cert. denied, 386 U.S. 994, 87 S.Ct. 1311, 18 L.Ed.2d 340.

gasoline credit sales invoices, were rejected as being an "evidence of indebtedness" within § 2311. Appellant's contention in this regard is rendered meritless by the clearly expressed congressional intention that bonds be included within the definition of "securities."[5] The evidence presented also amply establishes that the documents were transported in interstate commerce, and that appellant was a participant in that transportation. The evidence clearly shows the lost securities bonds to have been issued in Scottsdale, Arizona, and presented to a bank in Salt Lake City, Utah. This evidence, together with the evidence of Sparrow's participation as a co-conspirator, provides ample support for the jury's verdict which must be affirmed.[6]

Sparrow next challenges the instructions given regarding elements of the offense of mail fraud, contending the court's use of the term "willful" in one part of the instruction and "foreseen" in another part constituted inconsistent and contradictory instructions.[7] The elements of the offense are "(1) a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States Mails to further the scheme." United States v. Seasholtz, 435 F.2d 4, 8 (10th Cir. 1970). The first element must be supported by a showing of requisite willful intent.[8] The second element of the offense is satisfied when "one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended . . . ." Pereira v. United States, 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954). The trial court properly instructed the jury on the elements of the offense.

Sparrow also contends here that his conviction of mail fraud lacks supportive evidence that he was directly involved in the mailing of the letter, which contained six dividend checks, by the secretary of Tintic Standard Mining Co. to co-defendant Green. There was ample evidence presented from which the jury could conclude this was done in furtherance of the scheme of the conspiracy, and that appellant was a co-conspirator.

Sparrow next challenges the admissibility of certain Western Union documents received as part of the prosecution's evidence on the counts charging appellant with fraud by wire. These documents, copies of telegraphic money orders to Sparrow from either Bill or Don Green, were admitted under 28 U.S.C. § 1732 as business records. Appellant's objection to admission on the basis that the Western Union district manager lacked personal knowledge of the matters contained in the documents is not well taken, particularly in view of the statutory language that "lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but . . . shall not affect its admissibility." 28 U.S.C. § 1732(a). There was, again, ample evidence from which the jury could conclude that these acts were done in furtherance of the conspiracy and that Sparrow was a member of the conspiracy.

5. " 'Securities' includes any . . . bond . . . ." 18 U.S.C. § 2311.

6. United States v. Miller, 460 F.2d 582 (10th Cir. 1972).

7. In defining the elements of the offense, the court stated, "To act with intent to defraud means to act *willfully* and with the specific intent to deceive or cheat . . . ." (Emphasis added). In a later instruction, the court stated, "A causing of the use of the mails as indicated is established when the evidence shows that all of the participants in the scheme would have *foreseen* that it would be natural and probable to resort to the use of the United States Mails in the execution of said scheme . . . ." (Emphasis added).

8. Elbel v. United States, 364 F.2d 127 (10th Cir. 1966), cert. denied, 385 U.S. 1014, 87 S.Ct. 726, 17 L.Ed.2d 550, reh. denied, 386 U.S. 939, 87 S.Ct. 959, 17 L.Ed.2d 812.

Appellant also challenges the trial court's refusal of evidence of self-serving statements made by him to third persons after the offenses were discovered which, he contends, would have shown that he believed himself to be innocent of any wrongdoing. In Hayes v. United States, 227 F.2d 540, 543 (10th Cir. 1955), cert. denied, 353 U.S. 983, 77 S.Ct. 1280, 1 L.Ed.2d 1142, this court held, "When acts of subsequent conduct are offered to prove absence of evil intent, the trial court is vested with considerable discretion in admitting or refusing to admit such evidence." The trial court did not abuse its discretion in denying this evidence. We decline consideration of the remaining points raised by appellant as lacking sufficient merit.

Affirmed.