**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Francis B. FREEMAN, Jr.,
Defendant-Appellant.**

**No. 74–1431.**

United States Court of Appeals,
Tenth Circuit.

April 28, 1975.

Rehearing Denied June 17, 1975.

L. Thomas Elliston, Webb City, Mo. (Joseph W. Amick, Kansas City, Mo., and Larry J. Austin, Overland Park, Kan., on brief), for defendant-appellant.

Bruce Miller, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., Glen S. Kelly, Asst. U. S. Atty., Kansas City, Kan., on brief), for plaintiff-appellee.

Before HILL, SETH and BARRETT, Circuit Judges.

1. 18 U.S.C. § 2314 provides, in part:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more . . . shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

HILL, Circuit Judge.

Appellant Francis B. Freeman, Jr., was convicted by a jury in the United States District Court for the District of Kansas of violating 18 U.S.C. § 2314,[1] causing or inducing a person to travel in interstate commerce in the execution or concealment of a scheme to defraud that person of money or property having a value of $5,000 or more. On appeal, numerous grounds for reversal are proffered.

■ First, appellant contends the trial court erred in overruling his motions for judgment of acquittal because the evidence adduced at trial was insufficient to sustain his conviction. In deciding this issue we must view the evidence presented in the light most favorable to the government and give it the benefit of all legitimate inferences to be drawn therefrom. United States v. Twilligear, 460 F.2d 79 (10th Cir. 1972). Such evidence may be summarized as follows.

In 1969, appellant organized and became president of Freeman Construction Company, Inc. (Company), a telephone cable-laying business operating out of Archie, Missouri. The Company acquired construction equipment and vehicles necessary for its business operations by purchases financed through area banks or by leasing equipment and vehicles.

Acting on behalf of the Company, appellant leased numerous items from Manley Leasing Corporation (Manley) of Kansas City, Kansas. He obtained written options to purchase leased equipment and verbal options to purchase leased vehicles. The leases provided, inter alia, that the Company would not "do or permit anything . . . which may encumber, impair or cloud . . . title to said lease property."

In the spring of 1972, Robert Miller, the assistant vice president in charge of the equipment finance and leasing department of the Columbia Union National Bank & Trust Co. (Columbia), in Kansas City, Missouri, met with appellant to discuss a loan for the Company. The purpose of the loan was to pay off the Company's existing equipment loans and lease purchase options and consolidate them into one loan from Columbia. It was determined that a loan of approximately $200,000 would be needed to achieve this result.

Columbia wanted, as collateral, a security interest in equipment and vehicles having a purchase price value of twice the amount of the loan. Miller met with appellant on several occasions to determine if the Company had enough property to meet this requirement. Appellant supplied Miller with an outdated list of the Company's equipment and vehicles. From this list and from information verbally supplied by appellant, Miller made a current list of the Company's property, the purchase price value of which totaled over $441,000.

Appellant advised Miller that the Company owned some of the items on the list free and clear, that various lienholders to be paid off had an interest in some of the items, and that some of the items were leased. He also informed Miller that it would take approximately $17,000 to purchase equipment and vehicles leased from Manley, when in actuality the Company's lease purchase obligations may have been over $100,000. Miller verified some of the pay-off figures but accepted appellant's word on the amount needed to pay off Manley and did not verify it.

On June 16, 1972, appellant, acting on behalf of the Company, obtained a $192,-687.72 loan from Columbia.[2] As collateral, Columbia took a blanket security interest in all of the Company's equipment and vehicles appearing on the property list supplied by appellant. Liens on the property were paid off and Columbia gave appellant a $17,264.44 check, payable to Manley and the Company, to pay off Manley and purchase the leased equipment. Once Manley was paid off, the Company would own all of the items on the property list, subject to Columbia's security interest.

2. Finance charges brought the total amount of the loan to $221,644.80.

Appellant used this check to make the Company's current lease payments to Manley of approximately $5,000, and received a check from Manley for the overage. Columbia was not informed that the Company had not purchased the leased equipment from Manley, and Manley was not informed that Columbia had loaned the Company money to purchase the leased items or that it had taken a security interest therein.

Columbia asked appellant for original titles to all of the Company's rolling stock (which included items still owned by, and titled to, Manley) to perfect its security interest. After several such requests were made appellant notified Columbia that he had mailed the titles to it but that they apparently had been lost in the mail.

In January, 1973, Miller terminated his employment with Columbia and went to work for the Company as a bookkeeper. While opening some of its mail he observed monthly bills from Manley for items of leased equipment. He questioned appellant about the bills and appellant stated he would take care of it.

The Company encountered financial difficulties and defaulted on its loan. In February, 1973, Columbia deemed itself insecure and decided to repossess the Company's property and initiate foreclosure proceedings. It needed a place to store the property and contacted Sam Clark, the owner of a construction company in Olathe, Kansas. Clark owned a rock quarry near Olathe and Columbia asked if it could store the property there.

Clark became interested in purchasing some of the property and went to Columbia to ascertain the type and amount of property. Columbia showed him a copy of the Company's property list and told him about the Company. He mentioned the possibility of going into business with appellant and Columbia put the two men in contact.

Thereafter, Clark met with appellant and had several discussions with him about buying into the Company. Appellant represented that the Company owned all of the property on the list

Clark had seen at Columbia. Clark and appellant decided to form a partnership in which Clark would own 51% of the business and appellant would own the remaining 49%. They agreed that, to pay off the Company's loan from Columbia, Clark would come up with $75,000 and appellant would come up with $85,000. Clark was then going to borrow enough money to satisfy the remainder of the loan, which was then around $186,000.

On March 16, 1973, appellant flew from Archie, Missouri, to the Johnson County, Kansas, airport, where he met Clark. The purpose of the meeting was to pay off Columbia and each man was supposed to bring his share of the money to do so. However, appellant advised Clark that he had been unable to obtain his portion of the money, and he asked Clark to purchase all of the Company's property. They discussed the matter en route to Columbia, in Kansas City, Missouri, and agreed that Clark would purchase all of the Company's equipment and vehicles and lease them back to the Company, and that they would still operate as a partnership.

Columbia agreed to loan Clark the funds to purchase the Company's property. Clark obtained a personal loan in his name and the Company's loan was marked paid. Columbia, of course, wanted collateral for the loan and so it took a security interest in some of the property Clark was purchasing. A bill of sale was drawn up only for these items. Appellant stated that he did not want to give Clark a bill of sale for everything at that time because he wanted to inspect the equipment to ensure that the bills of sale showed the correct equipment serial numbers.

Clark subsequently learned that some of the equipment he had purchased was owned by Manley and others, and that some was nonexistent.

Based upon this evidence we believe a jury could find, beyond a reasonable doubt, that appellant was guilty of the crime charged. There was ample evidence that he devised a scheme to de-

fraud and obtain money or property by false or fraudulent representations; that he induced Clark, the intended victim, to travel in interstate commerce; and that he did so with the intent to defraud Clark out of money or property having a value of $5,000 or more.

■■■ Appellant contends the evidence is nonetheless insufficient because of fatal variances between allegations contained in the indictment and the proof at trial. Specifically, he argues the fraudulent scheme alleged in the indictment was not proven because it charged that (a) he leased equipment and obtained a loan when the evidence showed these acts were done in the Company's name; (b) the leased equipment was "pledged" to Columbia when the evidence showed that Columbia took a "security interest" in equipment; and (c) he conveyed title to all of the Company's equipment when the evidence showed that only sixteen items were conveyed.

A variance is not fatal unless a defendant could not have anticipated from the indictment what the evidence would be at trial or unless a conviction based on the indictment would not bar a subsequent prosecution for the same offense. *See, e. g.,* United States v. Cowley, 452 F.2d 243 (10th Cir. 1971). We do not believe the variances appellant complains of are so substantial or material as to meet these standards. They are merely technical imperfections which did not obfuscate the scheme or prejudice appellant by misleading him as to the evidence to be adduced at trial. He knew exactly what offense he was charged with and the indictment provided sufficient detail thereof so that a conviction necessarily would bar a subsequent prosecution for the same offense. Other variances proffered by appellant are similar in nature and are also without any merit.

■■ The next issue raised by appellant is that the trial court erred in denying his pre-trial motion to limit the testimony of certain government witnesses and in allowing them to testify about prior wrongful acts he allegedly committed. The substance of that testimony is as follows:

(a) The Company owned a diesel trencher which may have been included as collateral in a security agreement given to the Citizens Bank of Nevada, Missouri, for a loan. Appellant sold this trencher to Manley, leased it back, and later traded it to an equipment dealer in a transaction involving the Company's purchase of two backhoes. He represented that the Company owned the trencher. The deal was never consummated and appellant kept the trencher and the backhoes. He sold the backhoes to Manley and leased them back. The trencher appears on the property list given to Columbia.

(b) A trencher appeared on the property list given to Columbia and was ostensibly sold to Clark in March, 1973. However, the trencher was not sold by a dealer until July, 1973, and even then it was not sold to appellant.

(c) Appellant leased a Caterpillar from Manley in 1971. It was destroyed in a fire in February, 1972, but subsequently appeared on the Company's property list which was submitted to Columbia.

(d) Appellant threatened to kill one of his employees who had conversed with Clark about the equipment he had purchased.

(e) In June, 1972, appellant sold a Case 1000 dozer that had Case 1150 decals on it. A Case 1150 dozer was subsequently listed on the property list given to Columbia.

(f) Appellant hid some of the Company's equipment so that Columbia could not find it.

The general rule is that evidence of uncharged crimes, wrongs or alleged prejudicial acts is inadmissible. *See, e. g.,* United States v. Parker, 469 F.2d 884 (10th Cir. 1972). There are, however, several well-recognized exceptions to this rule. "[S]uch evidence . . . may be received for the purpose of proving a common plan, scheme or design to commit the offense charged or for the purpose of proving motive, opportunity, intent, knowledge, identity or absence of

mistake, inadvertence or accident." United States v. Burkhart, 458 F.2d 201, 204 (10th Cir. 1972). *See also* Federal Rules of Evidence, Rule 404(b).

The testimony complained of is admissible. It falls within the above exceptions and has probative value. The incidents related by this testimony, although they do concern prior acts, are not separate from or unrelated to the offense in question. They all involve equipment used as collateral to secure the loan from Columbia; the same equipment that Clark purchased, or thought he purchased.

These incidents establish appellant's wrongful use of equipment as part of a continuing plan or scheme that culminated in the Clark transaction. More importantly, they were relevant to show intent, knowledge and absence of mistake, inadvertence or accident. The trial court committed no error in denying appellant's motion to exclude this testimony, and properly admitted it into evidence.

■■ Appellant next argues the trial court erred by admitting into evidence government's exhibits 20 and 21, unsigned copies of two letters. He asserts that the government did not establish a proper foundation for their admission and that they constitute inadmissible hearsay. We disagree.

The discussions about writing the letters, their contents, and the circumstances under which they were obtained fashioned an adequate basis for the ruling admitting them into evidence. Clark testified that on March 20, 1973, appellant and Joe Freeman (appellant's brother and also a Company employee) told him letters had to be sent to the Company's customers, informing them that Clark now owned its equipment. A few days later Clark went to the Company's office in Archie, Missouri. At Joe Freeman's request a secretary gave Clark photocopies of two letters to be sent to customers. The letters stated, in part, that the Company had "sold its equipment and related items to . . . Clark . . . ." They contained the typed name of Joe Freeman above the signature blocks, but were unsigned. This evidence establishes a sufficient foundation.

Because the government's purpose in offering these letters was to prove the truth of their contents, they are hearsay. Since the above evidence indicates that appellant prepared the letters or that they were prepared at his direction, they are admissible as admissions against interest, an exception to the hearsay rule. Their admission into evidence was not improper.

■ It is next contended that the testimony of four government witnesses was inadmissible hearsay. Two of the witnesses were Columbia officers. One testified that Clark said he was interested in purchasing all of appellant's equipment and the other testified that Clark stated he was buying all of appellant's equipment.

These statements are hearsay but qualify for admission under the state of mind exception to the hearsay rule. That exception allows the admission of an extrajudicial statement, not to prove the truth of the matter asserted, but to show a future intent of the declarant to perform an act if the occurrence of that act is in issue. United States v. Brown, 490 F.2d 758 (D.C.Cir.1973). *See also* Federal Rules of Evidence, Rule 803(3). Since an issue in the case was the amount of equipment Clark purchased, these statements were admissible to show his intent to purchase all of the equipment.

A Manley employee testified that he sent Clark a list of equipment the Company leased from Manley, after Clark said he had purchased appellant's equipment. And Manley's president testified his secretary told him appellant had come into the office with a $17,000 check to pay the Company's current lease payments. He further testified that the payment was made, and that a check for the overage was returned to appellant or his representative.

Both of these statements are admissible. They were not offered to prove the

truth of the matters asserted but to demonstrate the circumstances which served as a foundation or basis in fact for the witnesses' subsequent actions. There was no error in allowing them to testify in this fashion. *See, e. g.,* United States v. Walling, 486 F.2d 229 (9th Cir. 1973), cert. den'd, 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479.

▮ Appellant argues the trial court erred in admitting testimony that was based on conclusion, speculation, conjecture, in narrative form, not responsive to the question asked, and not based upon personal knowledge.

Robert Miller testified that after he terminated his employment with Columbia and went to work for the Company he opened some mail containing monthly equipment rental bills from Manley. He was asked what these bills meant to him and he replied, in essence, that he felt the equipment might not have been purchased. He was also asked if he had scrutinized the Company's financial statement when he was processing its loan and, if so, what the lease purchase obligations contained therein indicated to him. He said he could not recall what he thought when he noticed them. Finally, he was asked if he would have recommended approval of the loan to the Company if the value of the equipment to be used as collateral was not as high as represented. He replied that it would be hard to say.

Ordinarily a lay witness' testimony should be confined to statements of concrete fact within his knowledge, observation and recollection. However, how far a witness may go in stating an opinion or conclusion is for the practical discretion of the trial court. *See, e. g.,* Zimberg v. United States, 142 F.2d 132 (1st Cir. 1944), cert. den'd, 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573.

We think the trial court acted within the bounds of its discretion in admitting Miller's testimony. Because of his dual position as the Columbia officer who processed the Company's loan, and later as a Company employee, his opinions regarding the invoices, financial statement and loan were based upon solid facts within his personal knowledge.

▮ Edward Bickerton testified there was no doubt in appellant's mind that he was selling all of his equipment. Appellant contends this statement was based upon speculation, was an opinion on an ultimate fact before the jury, and therefore was inadmissible. We disagree.

Bickerton was the executive vice president of Columbia. Clark and appellant met in his office to pay off the Company's loan, obtain a new loan in Clark's name and convey the Company's equipment to Clark. His testimony was based upon his knowledge of these activities. As such, it was not improper. He was merely giving a shorthand rendition of his knowledge of the total situation and the collective facts. Nor was the statement improper because it was an opinion on an ultimate issue. 2 Jones On Evidence § 14:2 (6th ed. 1972). *See also* Federal Rules of Evidence, Rule 704.

Numerous other statements of a similar nature are proffered by appellant as grounds for reversal. We find that they have no merit and are unworthy of comment.

▮ It is next argued that the trial court erred in sustaining the government's objections to a portion of appellant's opening statement and in admonishing appellant's attorney in the presence of the jury.

Before the trial started appellant's attorney was informed by the trial court that he could refer to civil suits between appellant and Clark only for credibility purposes. Appellant's attorney thereafter commenced his opening statement to the jury by referring to the instant case as one of a series of disputes between appellant and Clark, and by informing the jury of a pending civil suit by Clark against appellant. The government objected to these remarks. The trial court sustained the objection and admonished appellant's attorney that he could refer to civil suits only for credibility purposes and that he should confine his remarks to what his evidence was going to be.

Appellant's attorney then informed the jury of a second civil suit, a pending replevin action instituted by appellant against Clark, and also said appellant was getting word that he was being slandered by Clark. The government again objected and the trial court again admonished appellant's attorney. Subsequently, appellant's attorney referred to a third civil suit, a slander action between Clark and appellant, and he was again admonished by the trial court.

The scope and extent of the defendant's opening statement rests largely in the discretion of the trial court. 23A C.J.S. Criminal Law § 1086 (1961). The function of the defendant's opening statement is to enable him to inform the court and jury what he expects to prove, and the trial court may properly exclude irrelevant facts.

Since the civil suits had no relevancy to the criminal charge the trial court properly exercised its discretion in excluding reference to them. Nor do we find any error in the trial court's admonitions. Appellant's attorney was warned before the trial, and on several occasions during his opening statement, that references to civil cases would not be allowed. By repeatedly referring to these actions he invited the trial court's admonitions.

During cross examination of a former Company employee appellant's attorney attempted to establish that the witness was biased by showing that, in a civil action between Clark and appellant, he had talked to Clark's attorney but had refused to give depositions to or talk to appellant's attorney. The trial court refused to allow this line of questioning and denied a subsequent offer of proof.

We find no error here. The record indicates the witness may have had valid reasons for his actions. In any event, we do not see a sufficient nexus to establish bias. Other questions asked of this witness elicited sufficient facts as to his bias in order for a jury to properly appraise his testimony.

Finally, appellant contends the trial court erred in denying his motion for a new trial, based on all the allegedly prejudicial errors previously discussed. Our review of the record discloses nothing which would lead us to believe he did not have a fair and impartial trial.

Affirmed.