UNITED STATES of America,
Appellee,

v.

Richard Edward BERZINSKI,
Appellant.

No. 75–1480.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1975.

Decided Feb. 6, 1976.

John K. von Lackum, Cedar Rapids, Iowa, for appellant.

Evan L. Hultman, U. S. Atty., Sioux City, Iowa, for appellee.

Before GIBSON, Chief Judge, and LAY and STEPHENSON, Circuit Judges.

LAY, Circuit Judge.

Richard E. Berzinski was convicted of willful income tax evasion for the years 1968 through 1971, under 26 U.S.C. § 7201. The defendant admits a substantial underreporting of income on the returns, but argues (1) that the evidence was insufficient to support a finding of the requisite intent to violate the law, (2) that the district court erred in instructing on intent and (3) that the trial court erred in restricting the scope of cross-examination. We affirm.

I

The fundamental issue is the sufficiency of evidence to sustain the conviction. The evidence adduced at trial showed that Berzinski during the years in question was the owner of a restaurant in Cedar Rapids, Iowa. At the end of each business day his cashier would take the sales figures from the cash register and attempt to reconcile those figures with the cash and charges in the cash drawer. From these daily reports, the defendant made monthly sales summaries which he submitted to his accountant. Included in these monthly sales summaries were the defendant's check stubs, from which the accountant determined the business expenses. Although some expenses were paid in cash, the testimony was that the defendant would write one check at the end of the month to the business to cover the cash pay-outs. This provided a convenient memorandum of the cash pay-outs for the accountant's computation of the month's expenses.

The accountant assumed, erroneously, that the total sales figure provided him included the three per cent state sales tax. His mistake was due in part to the fact that he had previously handled similar work when the defendant had operated another restaurant. At that time, the cash register reported gross sales and sales tax as one figure. When the defendant opened the new restaurant, he obtained a new cash register which automatically separated the sales tax figure from the gross sales. Since the accountant was not aware of this change in reporting income, he continued to deduct from the gross sales the three per cent sales tax.

From these erroneous computations, the accountant prepared monthly profit and loss statements which he periodically provided to Berzinski. The accountant testified that the sole purpose of these "P & L's" was to benefit the defendant's understanding of the profit situation. These monthly P & L's also provided the basis for the accountant's preparation of Berzinski's yearly income tax return.

The original data such as guest checks and cash register tapes were not available at trial. The only sales and income information available was the defendant's own monthly summaries which he had provided to his accountant, so the government reconstructed the defendant's actual income by analyzing the defendant's bank deposits over the period covered by the indictment. Taxable income was determined by adding the defendant's deposits to the defendant's cash expenditures, and then deducting non-income items such as loan proceeds and transfers between accounts. The government also deducted business expenses and non-business items. The taxable income figure resulting from this analysis was substantially higher than the income reported by the defendant in each of the relevant years.

To prove intent to evade the income tax, the government relied on evidence that (1) the defendant continually received the accountant's work product (monthly summaries) reflecting the sales tax error and consequent underreporting of income and (2) the defendant allowed the accountant to use check stubs of checks which had never been issued or had not cleared the bank, in the accountant's computation of the business expenses.

### Defendant's Knowledge of the Accountant's Mistake

Both the accountant and the defendant admitted on cross-examination that the sales tax mistake clearly appeared on the accountant's profit and loss summaries, which were provided solely for Mr. Berzinski's information. The defendant contended that he was not aware of the accountant's mistake at the time the returns were filed. The government argues that the evidence was sufficient to support a jury finding that the defendant knew of the mistake and intended to underreport income.

The government presented evidence that the defendant himself had prepared profit and loss statements as well as balance sheets, in applying for loans from Morris Plan. These P & L's reported income substantially higher than did the defendant's tax returns. The defendant contended that he had prepared these figures without the aid of the accountant's summaries, but he admitted that the expense side of his financial statements was "very similar" to the expense side of the accountant's incorrect summaries in terms of the figures and the order of presentation. The government urges that this is further evidence that the defendant had actual knowledge of the contents of the accountant's incorrect summaries.

The government made a detailed comparison of the figures used in the accountant's monthly summaries, the income tax returns, the Morris Plan statements and the Internal Revenue Service's computation of defendant's income through the bank deposits method for the years 1968, 1969 and 1970. From the testimony of the government expert, George Wood, the figures for the year 1968 can be reconstructed as follows:

| | Accountant's P&L Summary | Tax Return | P&L Given to Morris Plan by the Defendant | IRS Computation |
|---|---|---|---|---|
| Gross Receipts | $352,424.80 | $352,424.80 | $368,484.00 | $368,917.86 |
| COGS & Operating Expenses | 333,632.87 | 337,373.08 | 337,765.00 | 336,525.50 |
| Depreciation | 10,303.20 | 8,996.15 | –0– | 8,996.15 |
| Net Profit | $ 8,488.73 | $ 6,055.57 | $ 30,719.00 | $ 23,396.12 |

There is little difference between the gross receipt figures in the accountant's P & L summaries and the tax return because the accountant computed both. The difference between the accountant's gross receipts figure and the IRS figure is greater than $16,000.00. Likewise, the difference between the accountant's gross receipts figure and the figure submitted to Morris Plan exceeds $16,000.00. However, the difference between the gross receipts figure Berzinski submitted to Morris Plan and the figure the IRS computed is less than $500.00. From this the government argues that the jury could find that Berzinski knew of the difference between the accountant's figures and the actual sales receipts, and that he intentionally took advantage of the mistake. The government urges that even if the three per cent sales tax is deducted from the IRS computation of gross receipts or from the defendant's own Morris Plan computations, there is still a substantial underreporting of income.

### The Check Stubs

Further attempting to show a scheme to evade taxation, the government produced evidence that the defendant allowed the accountant to compute the business expenses solely on the basis of check stubs, purportedly a complete record of the expenses paid. Both the accountant and the defendant admitted that this was the method used. It is undisputed that some of the check stubs so used represent what amounts to false expenses. Some of the checks were apparently never issued while others never cleared the bank. The defendant signed all the checks. He knew that some of the checks were not sent or did not clear and he had no explanation for the others. From this, the government argues the jury could infer that the defendant intended to take advantage of the business expenses computation method employed by his accountant and get greater deductions than he actually deserved, resulting in less tax liability.

This court must test the sufficiency of the evidence by viewing it "in the light most favorable to the government and accepting as established all reasonable inferences." *United States v. Kelton*, 519 F.2d 366, 367 (8th Cir. 1975). *See also Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). It is settled that a consistent pattern of understatement of income may be used to establish willful intent. *See Holland v. United States*, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Rischard*, 471 F.2d 105, 107 (8th Cir. 1973). In this case, the defendant admits such consistent understatement. We find sufficient evidence in the record to support the jury's finding that the defendant possessed the requisite intent to evade paying the proper tax.

## II

The defendant contends that the court failed to properly instruct the jury concerning intent. The district court told the jury: "It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted."

The defendant argues that the instruction (1) allows the jury to mistakenly believe that it is permissible to infer specific knowledge or intent solely from the doing of a particular act, without regard to the totality of the circumstances; (2) shifts the burden of proof on intent to the defendant; and (3) transforms the question to whether a reasonable man in similar circumstances—rather than the defendant—would have had the requisite intent.

We reject these arguments. A reading of the court's overall instructions reveals that the jury was informed of the need to consider all the evidence. They were instructed that intent must be determined from all the facts and circumstances.

The argument that the instruction shifts the burden of proof of intent to the defendant is without merit. The cases in which burden of proof problems constituted plain or reversible error were grounded on the fact that the instruction told the jury to *presume* intent from

acts committed or omitted unless the contrary appeared from the evidence. This, in effect, has been held error in that it shifts the burden to the defendant to prove lack of intent. This portion of the instruction was omitted in the present case. *United States v. Durham,* 512 F.2d 1281 (5th Cir. 1975); *United States v. Wilkinson,* 460 F.2d 725 (5th Cir. 1972); *Mann v. United States,* 319 F.2d 404 (5th Cir. 1963), *cert. denied,* 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964).

### III

Defendant's final contention on appeal is that the trial judge prejudicially curtailed the cross-examination of a government witness. The record shows this argument to be specious. During cross-examination, counsel asked Mr. Knapp, a special agent for IRS assigned to investigate the case the following question: "Now, after that meeting was my next contact with you the afternoon before the grand jury met?" The government entered a general objection which was sustained. Immediately thereafter the court declared a fifteen minute recess. The record shows that counsel did not attempt to pursue the question or make an offer of proof. It is now urged that the defendant intended to corroborate his statement that he did not know of the accountant's mistake until the Thursday before the trial.

To show the relevancy of such general questioning, counsel has an obligation to make clear what he intends to prove. In *Hawkins v. Missouri Pac. R.,* 188 F.2d 348 (8th Cir. 1951), we observed:

> [T]he failure to comply with the requirement of rule 43(c) of the Rules of Civil Procedure, 28 U.S.C.A., as to making offer of proof, leaves appellant here without any basis for complaint of the trial court's action. This is not a situation of such plainness and certainty as to what the witness' testimony would be that the making of an offer of proof could properly be regarded as a mere futility. . . . And equal-

ly, the situation can not be said to be one that involves such a plain probable miscarriage of justice on seeming error as to entitle it to be urged that we should act sua sponte, without regard to procedural preservation and actual demonstration of the asserted error. 188 F.2d at 350.

*See Bernard v. Omaha Hotel, Inc.,* 482 F.2d 1222 (8th Cir. 1973); *accord, United States v. Honneus,* 508 F.2d 566 (1st Cir. 1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975); *United States v. Fletcher,* 444 F.2d 619 (10th Cir. 1971).

Under the circumstances, the trial judge's discretionary ruling will not be disturbed.

Judgment affirmed.