**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Homer R. ADCOCK, Defendant-Appellant.**

**No. 76–2056.**

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1977.

Decided June 14, 1977.

Rehearing and Rehearing En Banc Denied July 6, 1977.

---

**5.** *See* note 4, *supra.*

Gary S. Gill, Des Moines, Iowa, for appellant; Walter R. Brown and Harold N. Schneebeck, Jr. Des Moines, Iowa, on brief.

Daniel W. Schermer, Tax Div., Dept. of Justice, Washington, D. C., for appellee; Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Jr., Robert E. Lindsay, Tax Div., S. Cass Weiland, Crim. Div., Dept. of Justice, Washington, D. C., and George H. Perry, U. S. Atty., Des Moines, Iowa, on brief.

Before HEANEY and STEPHENSON, Circuit Judges, and NANGLE,* District Judge.

STEPHENSON, Circuit Judge.

Defendant Adcock appeals from his jury conviction on two counts charging violations of the Hobbs Act (18 U.S.C. § 1951); three counts charging willful evasion of federal income taxes (26 U.S.C. § 7201) for the years 1969, 1970, and 1971; and three counts charging the filing of false income tax returns (26 U.S.C. § 7206(1)) for the same years. The district court[1] imposed a three year concurrent sentence on all counts, and fines totalling $20,000. In this appeal defendant urges numerous trial errors. We affirm.

In brief the evidence indicates that appellant was a member of the Iowa Liquor Control Commission (Commission) for over 12 years, from July 1, 1959, to December 31, 1971. He served as its chairman except for the two year period from July 1, 1967, until July 1, 1969. Iowa is a "controlled" or "monopoly state." Wineries and distilleries sell their products to the Commission, which warehouses and distributes the liquor products to approximately 200 state-operated liquor stores for sale to the public. Companies desiring to sell to the Commission submit proposals to it. If the proposals are accepted the Commission then gives the company a "listing" for its product.

During the period in question it was the practice of the chairman to present proposed orders to the full (three member) Commission, which as a matter of course generally approved the same. Liquor orders were initially prepared by the merchandise manager and submitted to the Commission chairman, who either approved, disapproved, or modified them. The manager testified that appellant, while serving as chairman, changed the orders about ninety percent of the time and often refused to reorder products which were in low supply or out of stock.

Mario Perelli-Minetti (Perelli-Minetti), general manager of the California Wine Association, testified that in late July 1965 he came to Iowa for the purpose of retaining a representative for his company. Its previous representative had died in 1964. During the course of his visit he met with appellant in his office at the Commission. Perelli-Minetti testified that appellant, among other things, said, "You don't need a broker. * * * I will take care of your orders. * * * I will see that your products are distributed to the state stores. * * * [N]obody can do as good a job as I can." Perelli-Minetti then related that appellant asked for $20,000 in cash starting in 1965; the same amount each year thereafter, to be paid in $10,000 installments at the spring and fall monopoly state conventions. He testified that $15,000 was actually paid

* The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable William C. Hanson, Chief Judge, United States District Court for the Southern District of Iowa. A fine of $10,000 was imposed on Count I of the extortion counts, $5,000 on the 1969 tax evasion count, and $5,000 on the 1970 tax evasion charge.

in 1965, $25,000 in 1966 to make up the $5,000 deficit in 1965, and the $20,000 each year thereafter, including the prosecution years of 1969, 1970 and 1971. According to Perelli-Minetti, funds for making the payments to appellant were generated within the company by false invoices and payment was made in cash. Numerous documents corroborative of Perelli-Minetti's testimony were received in evidence. Other evidence supporting the guilty verdict will be discussed in connection with the trial errors urged by appellant.

Appellant testified in his own behalf and denied that he received any funds from Perelli-Minetti or anyone else. He acknowledged receiving $200 a couple of times from Linwood Pedrick, another liquor representative, to buy dinner tickets to a political party. He also admitted receiving a gold watch, a portable tv set and a suit as gifts from Perelli-Minetti on various occasions.

*Similar Acts*

Appellant objected to Perelli-Minetti's testimony concerning the genesis of the extortion scheme in 1965 and all subsequent payments prior to the prosecution years. The experienced trial court promptly cautioned the jury[2] that the defendant was on trial only for those acts charged in the indictment and that "Such evidence is only admissible to shed light on the possible motive or intent of the Defendant or the possible existence of a scheme or plan in terms of the crimes charged in this indictment. * * * [E]vidence of other acts you may deem to be similar are not admissible to show the Defendant acted in conformity with those acts at a later date * * *." The court repeated this admonition on several occasions and further instructed on this subject in its final charge to the jury by

giving the instruction found in E. Devitt and C. Blackmar, Federal Jury Practice and Instructions § 13.08, at 281 (2d ed. 1970).

The evidence was admissible under Fed.R.Evid. 404(b), which provides:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Here the extortion plan began with the demands for cash made by defendant to Perelli-Minetti in late July 1965.[3] The demands were met by the payments of cash commencing in 1965 and continuing without interruption through the prosecution years and until appellant left the Commission on December 31, 1971. It is well established that it is appropriate to show the course of conduct leading to the events which form the basis of the crime charged. *United States v. Calvert*, 523 F.2d 895, 907 (8th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976); *United States v. Conley*, 523 F.2d 650, 653 (8th Cir. 1975), *cert. denied*, 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976); *United States v. Cochran*, 475 F.2d 1080, 1082–83 (8th Cir.), *cert. denied*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *McCormick v. United States*, 9 F.2d 237, 238–39 (8th Cir. 1925). The evidence objected to was clearly admissible.

Other similar acts objected to by appellant consisted of proof that appellant received illegal payments from other individuals in the liquor industry under circumstances similar to the payments made by Perelli-Minetti and Clair Fischell[4] during

2. *See United States v. Calvert*, 523 F.2d 895, 907 (8th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976).

3. Count I of the extortion counts charged that "between on or about January 1, 1964, and on or about April 24, 1971 * * * the defendant * * * did feloniously * * * delay and affect interstate commerce, * * * by extor-

tion * * * to wit: by obtaining on or about April 24, 1971, from Mario Perelli-Minetti * * property in the form of $10,000 in currency * * *."

4. Clair Fischell, an employee of a firm that represented Christian Brothers Wine and Brandy and other liquor companies, testified that during the tax prosecution years of 1970 and

the prosecution years, Linwood Pedrick, a liquor representative, testified over objection to making $200 a month payments to appellant during a two-year period from July 1, 1965, to July 1, 1967. It was his recollection that some of the money was paid to appellant at meetings or conventions. Similarly, Raymond Sibbert, a liquor representative, related that he had made payments totaling approximately $5,000 to appellant at his office over the period 1962 to 1967. He indicated that upon instruction from appellant he placed the money in appellant's desk and closed it. In each instance the trial court gave a cautionary instruction to the jury similar to that previously described in connection with Perelli-Minetti's testimony concerning payments to appellant during non-prosecution years.

Appellant argues that inasmuch as he denied both that the acts for which he was charged occurred, and that the prior similar acts occurred, the issue of intent was never raised and therefore the court erred in admitting the evidence for that purpose. We disagree.

■ Initially we observe that intent was an essential element of each of the crimes charged. The burden was on the government to prove appellant's guilt beyond a reasonable doubt. It was duty-bound in its case-in-chief to establish all of the essential elements of the crimes charged. The government need not await the defendant's denial of intent before offering evidence of similar acts relevant to that issue. *United States v. Conley, supra,* 523 F.2d at 654. At the time the evidence in issue was received the trial court carefully instructed that the "evidence is only admissible to shed light on the *possible* motive or intent of the Defendant or the *possible* existence of a scheme or plan * * *." (emphasis ours.)

■ Neither the court nor the government can be expected to be clairvoyant. It was not an abuse of discretion for the court to admit relevant evidence on the essential

issue of motive and intent unless the court found that its probative value was "substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. *United States v. Maestas,* 554 F.2d 834 (8th Cir., 1977); *United States v. Conley, supra,* 523 F.2d at 654; *United States v. Marchildon,* 519 F.2d 337, 346 (8th Cir. 1975); *United States v. Olsen,* 487 F.2d 77, 79–80 (8th Cir. 1973), *cert. denied,* 415 U.S. 993, 94 S.Ct. 1594, 39 L.Ed.2d 890 (1974).

■ It is also well settled that in a tax case the government may show proof of unreported income in prior years indicating a pattern of understatement of income which is relevant to the issue of willful intent. *United States v. Berzinski,* 529 F.2d 590, 593 (8th Cir. 1976); *Amos v. United States,* 496 F.2d 1269, 1273–74 (8th Cir. 1974).

Similar acts have also been admitted in evidence in extortion cases in order to show motive and intent. *United States v. Braasch,* 505 F.2d 139, 149 (7th Cir. 1974); *United States v. Kenny,* 462 F.2d 1205, 1224 (3d Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972).

*Appellant's income from liquor companies during the post-indictment year*

■ Appellant contends the trial court erred in admitting, over objection, appellant's response to a question by the government on cross-examination that he had received $162,935 from liquor companies the first year after he left the Commission. Appellant's salary as commissioner the previous year had been $12,500. Initially it is noted that appellant opened the door to this line of inquiry when on direct examination he testified that he "represented a few distilleries" after leaving the Commission. The government was thus entitled to inquire into this area further. *United States v. Sparrow,* 470 F.2d 885, 888 (10th Cir. 1972), *cert. denied,* 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 397 (1973); *United States*

---

1971 on three occasions he made $500 payments to appellant in his office at the Commission. Fischell indicated that after he removed

the money from his wallet appellant would open his drawer and Fischell would put the money therein.

*v. Hicks*, 127 U.S.App.D.C. 209, 382 F.2d 158, 163 (1967). Moreover, the testimony was corroborative of the testimony of Perelli-Minetti that appellant told him that he was leaving the Commission but not to worry, his secretary would still be there. According to Perelli-Minetti, appellant further told him "I can do just about as much for you outside the Commission as I could inside the Commission." We are satisfied the court did not abuse its discretion in admitting this testimony. *Cf. Sears v. United States*, 490 F.2d 150, 152–53 (8th Cir.), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3077, 41 L.Ed.2d 670 (1974).

*Instructions*

█ Appellant urges error in the trial court's refusal to give his requested instruction No. 25, which refers to the absence of any duty on the part of the defendant in a criminal case to call witnesses or produce evidence, and instruction No. 37, which instructs the jury that they were not to weigh the evidence on the basis of the number of witnesses testifying on either side. After examining the instructions as a whole we are satisfied that the court fully instructed on the presumption of innocence of the defendant. The court further instructed that the burden of proof is "always upon the prosecution to prove guilt beyond a reasonable doubt," and that "the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence." Further, the matter of credibility of witnesses was fully covered. We find appellant's claim of error with respect to the instructions to be without merit.

*Out-of-court statements to show state of mind*

The appellant contends the district court erred in admitting certain testimony of Edward Karkule, Linwood Pedrick, Perelli-Minetti and Joseph Vinti and in instructing the jury concerning state of mind testimony. Edward Karkule, then a liquor representative doing business with the state of Iowa, testified over objection by appellant that in 1970 or 1971 he had a discussion with Perelli-Minetti over the marketing of wine in Iowa. The court before admitting the testimony cautioned the jury that "such testimony is not being admitted to prove the truth of any matters he asserts but only to show the state of mind of the alleged victim." Karkule then testified that "I asked him how he got into Iowa, and he said 'The hard way' * * *. I asked him what it cost, and my best recollection is that he said 20 or 25 thousand * * *. * * * I said, 'Well, that didn't seem too bad * * *' and he remarked with, 'Well, that's every year.'" Linwood Pedrick, another liquor representative, testified that he, too, had paid money to the defendant and that in doing so he was continuing the practice which had been set up by his predecessor, Coates. Pedrick stated "my predecessor informed me that this was going on, and at his retirement in July of 1965, I continued the arrangements that had been previously made * * *." (Prior to receiving this testimony the court repeated its similar acts and state of mind instructions.) The appellant argues that Karkule's and Pedrick's statements were hearsay and therefore inadmissible.

█ In a Hobbs Act case such as this, the state of mind of the extortion victims is an essential element of the crime charged. The government must establish that the defendant induced the victim to part with his money or property and that the defendant did so by extortion. Extortion may be committed either by use of fear, or "under color of official right." 18 U.S.C. § 1951(b)(2). Extortion "under color of official right" is the wrongful taking by a public officer of money or property not due him or his office, whether or not the taking was accomplished by force, threats or use of fear. The term "fear" includes fear of economic loss. Unless the payments are made under some form of compulsion there is no extortion. The appellant recognized that the state of mind of the alleged victims was crucial to conviction. At the close of the evidence the appellant proffered an instruction which defined bribery and extortion

and cautioned the jury that defendant could not be convicted under the indictment for bribery. Bribery, of course, connotes a voluntary offer to obtain gain, where extortion connotes some form of coercion. Under the indictment defendant could not be convicted of bribery. Thus the state of mind of the victim is crucial and evidence thereof is admissible. Fed.R.Evid. 803(3).

█ In this circuit it is well settled that testimony showing the state of mind of the victim through out-of-court statements is admissible in an extortion case. *United States v. Biondo*, 483 F.2d 635, 643 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974); *Nick v. United States*, 122 F.2d 660, 670–73 (8th Cir. 1941). In *United States v. Hyde*, 448 F.2d 815, 845 (5th Cir. 1971), *cert. denied*, 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745 (1972), an extortion case, the court permitted the victim's attorney to testify that his client told him of receiving an extortion demand. The court recognized that:

> The victim's fearful state of mind is a crucial element in proving extortion. The testimony of victims as to what others said to them, and the testimony of others as to what they said to victims is admitted not for the truth of the information in the statements but for the fact that the victim heard them and that they would have tended to produce fear in his mind. As Professor Wigmore has pointed out:
>
> > Wherever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to

be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned.

Wigmore, Evidence § 1789 (1940). *See Nick v. United States, supra.* Thus it is no ground for objection that the third person making the statement to the victim is not produced as a witness or even that he is not named. The defendant's right of cross examination is preserved in that he can ask the witness whether he truly heard these fear-producing statements.

*See also United States v. Freeman*, 514 F.2d 1184, 1190–91 (10th Cir. 1975); *United States v. Stirone*, 311 F.2d 277 (3d Cir. 1962). We conclude that Karkule's and Pedrick's testimony was properly admitted. It follows that the state of mind instruction given by the court as a part of its final instructions to the jury was proper and consistent with the cautionary instructions given by the court during the trial when this testimony was received.[5]

█ Appellant further objects to the admission of testimony of Perelli-Minetti relating to his part of the conversations with his company's Eastern Division Sales Manager in New York, Charles Inzinna, involving the method by which the extortion payments would be raised. The court limited Perelli-Minetti to his part of the conversation. Perelli-Minetti testified that he requested Inzinna to send him a fictitious invoice for use in making a check and that such invoices were furnished and used by him. Since Perelli-Minetti was testifying as to what he said and did, there was no hearsay problem. Fed.R.Evid. 801, Advisory Committee Note to Subdivision (d).

---

**5.** The government further urges that Perelli-Minetti's statement to Karkule that he was paying $20,000 to $25,000 a year to do business in Iowa was also admissible to rebut a charge of recent fabrication. Fed.R.Evid. 801(d)(1)(B). Counsel for defendant suggested in his cross-examination of Perelli-Minetti that Perelli-Minetti was not paying defendant but was in fact stealing from his employer. The government also urges that Coates' statement to Pedrick, even if considered hearsay, was admissible under Fed.R.Evid. 804(b)(3) as a statement against penal interest. Coates at the time of trial was unavailable (deceased), and his statement was, in fact, in violation of his penal interest. Bribery was a violation of the Iowa statutes and in violation of 18 U.S.C. § 1952 (interstate travel in aid of racketeering enterprise). We need not reach these contentions because we are satisfied the statements were properly received to show state of mind. However, in the case of Coates' statements to Pedrick before his death, it must be conceded they contained the circumstantial guarantee of truthfulness and reliability envisioned by the exception to the hearsay rule.

■ Appellant also contends the trial court erred in admitting the testimony of Joseph Vinti, who identified phony invoices utilized by Inzinna and checks endorsed by Vinti's deceased father. Vinti's testimony objected to by appellant related to conversations with Inzinna which were not offered to prove the truth of Inzinna's statements but were offered to show the circumstances surrounding Inzinna's dealings with Vinti and Vinti Advertising, Inc. and the termination of that relationship. It was a collateral matter and in no way prejudicial to defendant.

## Closing Arguments

In the closing arguments counsel for the government commented:

> Mr. Adcock testified that he is in the habit of going to Las Vegas and taking a large sum of cash, and it wasn't too clear from the testimony whether it was $20,000 or $40,000.
>
> MR. GILL: I am going to object to that. The testimony was clear. It was $15,000.
>
> THE COURT: Whatever it was. The jury will determine what the record is. Proceed. Let's have less interruption unless there is real substance to it.

After reviewing the testimony we echo the expressed sentiment of the trial court. There is little substance to appellant's claim that government counsel misrepresented the testimony of appellant and thus deprived him of a fair trial.

## Motion for New Trial

■ Appellant complains because the trial court denied his motion for new trial without granting his request for an oral hearing thereon. This is a matter within the discretion of the trial court. *United States v. Pitts*, 508 F.2d 1237, 1241 (8th Cir. 1974). We find no abuse of discretion on this record.

## Motion for Bill of Particulars

The trial court denied appellant's motion for a bill of particulars filed September 21, 1976, on the grounds that it was untimely and without merit. Indictments were returned in this cause on April 13, 1976, and June 18, 1976. The case was initially set for trial on July 12, 1976, and continued until August 9, 1976. On July 30, 1976, appellant moved for a continuance upon the ground more time was needed to prepare his defense. The motion was granted and trial was set for October 18, 1976.

Appellant claims the court abused its discretion in denying the bill of particulars on the ground the motion was untimely. He argues that under Local Rule 29 "Written motions in criminal cases are discouraged until completion of the Omnibus Hearing Procedure set forth in [Local] Rule 31." The latter calls for a hearing, the purpose of which is to encourage voluntary disclosure by the government and eliminate written motion practice except when necessary. Appellant contends any untimeliness on his part was due solely to his reliance on these rules which were not complied with.

The trial court took note of this same contention and in its ruling stated:

> [I]t has been this Court's understanding that no formal omnibus hearing would be held, and that the parties would informally comply with Local Rule 31. This understanding was reinforced by the Court's informal meeting with counsel on August 4, 1976. It is significant to note that the pending motion was filed some six weeks after that meeting, and some four weeks prior to the impending October 18, 1976 trial date for this case. * * * Because the nature of the charges against the defendant are adequately disclosed to him, and in view of the detailed nature of the indictments and the fact that the Government has already disclosed much information to the defendant, the request, even if timely, must be denied.

■ After reviewing the record we are satisfied the trial court did not abuse its discretion in denying the bill of particulars. The record indicates that the government informed the defendant of the sources of unreported income, both during the prose-

cution and pre-prosecution years. The two indictments in this case total seven pages and are detailed. They set forth in factual terms the elements of the offenses charged. The defendant was sufficiently apprised of what he must be prepared to meet. The language was definite and certain enough to protect defendant's constitutional guarantee against double jeopardy. *See United States v. Brown*, 540 F.2d 364, 371 (8th Cir. 1976).

### Discovery

 Appellant makes the general allegation that "The interest of justice and the defendant's rights under the Sixth Amendment required that he be afforded broader pre-trial discovery rights then were given him." He argues that he should have been afforded the same broad discovery rights permitted in civil litigation. An examination of the record indicates that the government furnished appellant a vast amount of material requested by him in his Rule 16(a), Fed.R.Crim.P., motion for discovery and inspection. It appears that appellant's principal complaint arises from the court's denial of his Rule 15(a), Fed.R. Crim.P., motion (filed simultaneously with his motion for a bill of particulars) to take the discovery depositions of 19 potential government witnesses. In denying the motion the trial court noted that depositions in criminal cases are governed by Rule 15(a) and that the Rule's principal objective is the preservation of evidence for use at trial. It is not to provide a method of pretrial discovery. We agree. *See* 8 J. Moore's Federal Practice ¶ 15.01[3] at 15–8 (1976). *See also United States v. Steffes*, 35 F.R.D. 24 (D.Mont.1964). We also note as did the trial court that appellant's request was a blanket one. There was no showing of "exceptional circumstances" which would justify the request. We conclude that appellant's contention that he was not allowed proper discovery is without merit. Discovery matters are committed to the sound discretion of the trial court and are reviewable only upon an abuse of that discretion. *United States v. Crow Dog*, 532 F.2d 1182, 1189 (8th Cir. 1976). We find no abuse of discretion here.

### Sufficiency of the Evidence

At the close of all the evidence, the defendant moved to withdraw the issue of whether defendant made any threat within the meaning of 18 U.S.C. § 1951 on the grounds of insufficient evidence. This motion was renewed at the close of all the evidence. Defendant also moved for judgment of acquittal on all counts urging insufficiency of the evidence.

18 U.S.C. § 1951 provides in part as follows:

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

 The trial court properly instructed the jury that extortion "may be committed either by use of fear or 'under color of official right.'" *United States v. Brown*, 540 F.2d 364, 371–73 (8th Cir. 1976). Here the evidence was overwhelming that appellant obtained funds under "color of official right." Furthermore, the trial court property instructed the jury that "The term 'fear' does not necessarily refer to physical fear or fear of violence. It includes fear of economic loss." *See United States v. Brown, supra*, 540 F.2d at 373 n. 6. Taking the evidence in the light most favorable to the jury verdict, we are satisfied that there was ample evidence indicative of a fear of economic loss by Perelli-Minetti which warranted the submission of this issue to the jury.

Appellant's general motion for judgment of acquittal on all counts based on insufficient evidence to convict is without merit and does not warrant further discussion.

Affirmed.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. In my view, it was appropriate to admit the testimony of Perelli-Minetti on both the initial demand for cash and the payments pursuant to that

demand from 1965 through 1971. This testimony was admissible to show the course of conduct leading to the events which formed the basis of the crime charged. It was error, however, to receive the testimony of Pedrick and Sibbert. The probative value of this testimony was substantially outweighed by the danger of unfair prejudice. In my judgment, their testimony was not clear and convincing; rather, it was indefinite and vague. Moreover, I am unable to determine how this evidence was relevant to the issue of Adcock's intent. Neither witness testified that Adcock demanded the payments; they stated only that they paid money to him.

Also, it was clearly inappropriate to admit Karkule's testimony. It was received, as the majority points out, on the theory that it tended to show Perelli-Minetti's state of mind, namely, that he was coerced into making the payments. I believe it showed no such thing. At most, it established that Perelli-Minetti made payments to Adcock. Karkule was not asked whether the payment was a bribe or whether it was extorted. Yet, the nature of the payment was the crucial issue in this case.

I agree that the trial court properly denied discovery on the grounds that it was not timely. Were it not for this factor, I would hold that there was a particularized need to discover the testimony of the government witness. In effect, Adcock was forced to defend against charges different than those raised in the indictment and to do so without adequate opportunity to investigate and prepare his defense.