Sam **FOX** d/b/a **A & M Sales Company,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 25374.**

United States Court of Appeals
Fifth Circuit.

Sept. 30, 1969.

Solomon H. Friend, Bass & Friend, New York City, for appellant.

Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., for appellee.

Before AINSWORTH and SIMPSON, Circuit Judges, and SINGLETON, District Judge.

SINGLETON, District Judge:

This appeal is from a judgment and decree entered by the district court pursuant to 21 U.S.C. § 334(a) of the Food, Drug and Cosmetic Act condemning quantities of a drug product marketed by appellant under the name of "Ordinex" and certain labeling accompanying the drug product.[1] The decree and judgment was entered upon a jury verdict returned in favor of appellee, and appellant now appeals, asserting numerous points of error. After giving thorough consideration to the record made in the court below and the briefs submitted by counsel on appeal, we have concluded that the case must be reversed and remanded for a new trial. At the outset, however, and before addressing ourselves to the error which requires reversal, we are met with a question concerning the jurisdiction of the district court.

This in rem proceeding was commenced on October 28, 1963 by the filing of a libel of information, which alleged that appellant was in possession of substantial quantities of the condemned product and accompanying labeling, that the product had been manufactured in Florida from

---

1. Ordinex was marketed by appellant as an appetite suppressant which was to be used in connection with a low calorie diet plan known as the "Ordinex Plan."

raw materials shipped in interstate commerce, and that the product was at that time misbranded "while being held for sale after shipment in interstate commerce." On the same day, the articles specified in the libel of information were seized by a United States Marshal pursuant to a monition issued out of the district court. Thereafter, appellant, Sam Fox, doing business as A & M Sales Co., filed a claim to the articles and filed an answer which denied the allegations of misbranding and asserted a want of jurisdiction on part of the district court.

Appellant's contention that the district court lacked jurisdiction is unique but unpersuasive. Prior to the filing of the libel in the instant case, in September of 1963 an unidentified agent of the Florida State Board of Health affixed to the articles involved in this case a tag reciting that the articles were not to be disposed of by sale or otherwise on the ground that the articles were misbranded. Section 500.43(1) of the Florida Food and Drug Act provides that when an article has been seized or detained the Commissioner of the State Board of Health or the Board of Health shall either petition a state court for an order of sale, if convinced that the articles are subject to seizure, or release the articles to their owner.[2] In the instant case, however, the label affixed to the articles bore the notation "HOLD FOR FEDERAL SEIZURE," and at no time has a petition of condemnation ever been filed in a Florida court. In fact, the record does not indicate that any action has been taken by authorities of the State of Florida in regard to these articles except the initial affixing of the tag to them in September of 1963. Despite this noticeable lack of interest by the State of Florida, however, appellant contends that the mere affixing of the label by the state agent has removed the articles in question from federal jurisdiction. We simply do not agree that so serious a consequence follows from so insignificant an act by some unidentified state official.

Under both Florida and federal law proceedings for the condemnation of misbranded articles of commerce are by their nature proceedings in rem. It is because of this fact that appellant seeks to invoke the aid of the well established principle as stated by the Supreme Court in Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189, 55 S.Ct. 386, 79 L.Ed. 850 (1935). There, the court stated:

> "But if the two suits are in rem or quasi in rem, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other."

See also Kline v. Burke Constr. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1927); Palmer v. Texas, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435 (1909).

As we have previously pointed out, there has never been any proceeding commenced in the Florida courts, and the Florida courts have never sought to exercise their jurisdiction. Indeed, Florida officials have not seen fit to take any action which might bring the articles involved here before the Florida courts. Appellant maintains, however, that the doctrine of prior in rem jurisdiction as stated in the *Penn General* case is applicable not only to those situations where there exists an actual, conflicting assertion of jurisdiction over a res by a state and a federal court, but also applies to

2. The statute provides in pertinent part:
   "(1) When any article detained or seized under § 500.42 has been found by the commissioner of the board of health to be subject to seizure and condemnation under § 500.42, the commissioner or the board of health shall petition a court for an order of condemnation or sale, as the court may direct.

\* \* \* \* \*

   "(3) If the commissioner or the board of health finds that any article seized under the provisions of § 500.42 was not subject to seizure under that section, the commissioner or the board of health or the designated officer or employee shall remove the tag or marking."

those situations where the only previous action taken is the seizure or detention of the res by a state official. In short, appellant argues that when the unidentified state official first affixed the label to the articles in question they became subject to the constructive custody of the Florida courts and were thereby removed from federal jurisdiction.

In support of this proposition appellant relies upon Department of Financial Institutions of Indiana v. Mercantile Commerce Bank & Trust Co., 92 F.2d 639 (7th Cir. 1937), cert. denied 303 U.S. 656, 58 S.Ct. 760, 82 L.Ed. 1116 (1938), and Cartlidge v. Rainey, 168 F.2d 841 (5th Cir. 1948). Both of these cases, we feel, are clearly distinguishable. In the *Mercantile Bank* case, the Indiana Department of Financial Institutions had taken possession of the assets of the Central Union Bank incident to the liquidation of the bank. Notice of the liquidation was filed with an Indiana Superior Court and a proceeding commenced styled "In the matter of the Liquidation of Central Union Bank." The Indiana court maintained and asserted jurisdiction over the assets of the bank for a period of two years, during which it entered numerous orders concerning the disposition of the bank's assets. Indeed, the appellees in the case had filed a claim in the state court proceeding, which was denied, and had perfected an unsuccessful appeal in the state system. Thereafter, for the first time they filed a suit in federal court on the basis of diversity of citizenship seeking foreclosure of a lien on part of the bank's assets. In reversing a judgment of the district court, the court of appeals relied upon the doctrine of prior in rem jurisdiction, but, as is obvious from the face of the opinion, not in the way appellant would have us to do so. In reversing, the court stated:

"While the Indiana department is an administrative body, its title and possession under the statute, *directed by the court,* is as full and complete as that of a receiver. *It has the actual custody of the property under a court order and that court, as we have seen*

*from the statutes, is granted complete jurisdiction over the assets.* * * *

"The superior court of Indiana is a court of general and unlimited jurisdiction in matters of law and equity and as such has the power to grant all the appropriate relief that a court of equity may grant to any litigant. To permit other courts with concurrent jurisdiction to interfere with the custody and possession of the assets under its control some *two years after its jurisdiction has attached* is to violate the principles announced by the Supreme Court * * *. Possession of the res disables the federal court from seizing it, for the property is withdrawn from the jurisdiction of all other courts." *Id.* at 643. (Emphasis added).

Thus, the *Mercantile Bank* case is clearly distinguishable for there a state court had actually exercised jurisdiction over the res in question for a period of two years before an attempt was made to invoke federal jurisdiction.

Although Cartlidge v. Rainey, *supra,* is closer to the facts of the instant case, it is also distinguishable. In Cartlidge, agents of the Texas Liquor Control Board had seized a quantity of liquor being transported through the State of Texas without a permit. Two days later, the owner of the liquor filed suit in federal court against state officials, invoking jurisdiction on the basis of diversity of citizenship and seeking to replevy the property. Two days after the federal court action had been filed, state officials filed suit in the Texas courts to have the liquor and the automobile used to transport it forfeited to the state. The federal district court entered a preliminary injunction, enjoining the state authorities from disposing of the liquor and the automobile pending a full hearing in the federal court. On appeal, we reversed on the ground that the district court should have dismissed the complaint for want of equity, and also observed that exclusive jurisdiction of the res resided in the state court. The facts involved in this case

are far different than those presented in *Cartlidge*. In *Cartlidge*, the State of Texas, acting through its proper officials, contested the jurisdiction of the federal court. Here, the State of Florida, which would be the proper party to raise the matter of jurisdiction, has acquiesced in the assertion of federal jurisdiction. Moreover, the notice affixed to the condemned articles shows on its face that there was never any intent on the part of the State of Florida to assert jurisdiction in the state courts. On the basis of these facts, we hold that the action by the unidentified state official in affixing the tag to the condemned drug before the libel of information was filed did not vest constructive jurisdiction of the res in the Florida courts and that the district court therefore properly refused to dismiss the proceedings for want of jurisdiction. Jurisdiction was conferred on the federal district court by federal law, the res was brought under its actual control, and the State of Florida made no effort to subject the res to the jurisdiction of the Florida courts.[3]

This brings us to the point of error which we feel requires that the case be reversed and remanded for a new trial.

At the conclusion of a four day trial, and after more than cursory jury deliberation, the foreman of the jury announced in open court a verdict for the appellee. A poll of the jury was then undertaken by the clerk of the court at the request of appellant's counsel. Each juror's name was called in rapid succession. The first seven jurors answered with an audible "Yes," that the verdict as announced by

the foreman was their individual verdict. When the clerk called the name of Matthew Larkin, the eighth juror, Larkin gave no audible response but simply looked at the floor without raising his head. The clerk continued to call the names of the remaining jurors in rapid succession, and they in turn answered "Yes" to the question whether the verdict as announced by the foreman was their individual verdict. The district judge then discharged the jury. Appellant's counsel immediately approached juror Larkin and inquired whether he had in fact voted for the government and whether on the call of the roll he had in fact answered in the affirmative. Larkin stated that he had not voted for the government, and that he had not answered in the affirmative when his name was called. Appellant's counsel obtained an affidavit from Larkin, which was subsequently verified by the affidavits of four other jurors which stated that Larkin had never voted for the government in the jury room, that all the jurors were of the opinion that a majority was sufficient to return a verdict, and that juror Larkin had not responded in the affirmative when his name was called on the poll of the jury. These affidavits were presented to the district court on appellant's motion for a new trial, but they were rejected. The district court was of the opinion that the affidavits could not be considered without violating the rule against allowing a juror to impeach his verdict.[4] Further, the district court concluded that juror Larkin's silence should be construed as

---

3. Appellant also contends that the seizure of the condemned articles was invalid because it was effected prior to the filing of the libel of information and the issuance of a monition by the federal court. Section 304(b) of the Federal Food, Drug and Cosmetic Act provides that "the article shall be liable to seizure by process pursuant to the libel, and the procedure in cases under this section shall conform, as nearly as may be, to the procedure in admiralty." See also 443 Cans etc., Eggs v. United States, 226 U.S. 172, 33 S.Ct. 50, 57 L.Ed. 174

(1912); Dainty Maid, Inc. v. United States, 216 F.2d 668 (6th Cir. 1954). In this case, however, the federal seizure was not effected until after the issuance of the monition on October 28, 1963. Contrary to appellant's contention, we do not agree that the unauthorized seizure by the unidentified state officer in September of 1963 constituted the federal seizure.

4. E. g., McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); Fort Worth & Denver Ry. Co. v. Thompson, 216 F.2d 790 (5th Cir. 1955).

acquiescence to the verdict as announced in open court.[5] We do not agree with either of these conclusions.

Unless otherwise stipulated, the verdict in a civil case must be the unanimous verdict of twelve jurors. Fed. R.Civ.P. 48. See cases cited in C. Wright, Federal Courts 361 n. 4 (1963). Likewise, the verdict in a criminal case must be unanimous or it constitutes no verdict at all. Rule 31, Fed.R.Crim.P. The affidavits of Larkin and the four other jurors, we feel, demonstrate clearly that there was never any unanimity expressed in open court in the poll of the jury and that the verdict purportedly returned in open court was not the verdict of each of the twelve jurors. By considering these affidavits, we do not impinge upon the rule that the affidavit of a juror may not be used to impeach a verdict which has been announced in open court. It has long been well settled that the affidavit of a juror is admissible to show the true verdict or that no verdict was reached at all. See, e. g., Young v. United States, 163 F.2d 187, 189 (10th Cir. 1947); cert. denied, 322 U.S. 770, 68 S. Ct. 83, 92 L.Ed. 355 (1947); Freid v. McGrath, 77 U.S.App.D.C. 385, 135 F.2d 833, 834 (1943); Pelzer Mfg. Co. v. Hamburg-Bremen Fire Ins. Co., 71 F. 826, 831 (D.S.C.1896); cf. Mattox v. United States, 146 U.S. 140, 148, 150, 13 S.Ct. 50, 36 L.Ed. 917 (1892). That is precisely the situation we have here.

We also feel that the district court erred in concluding that Larkin's silence on the poll should be construed as an affirmative response on his part. At most, his silence was ambiguous. It was the duty of the district court in polling the jury to elicit a definite response and thereby eliminate all doubt as to whether the verdict of the jury is unanimous. Mattice v. Maryland Casualty Co., *supra*.

Therefore, for the foregoing reasons, the judgment of the district court is reversed and remanded for a new trial.[6]

Reversed and remanded.

---

5. The only verdict is that which is returned and announced in open court as the verdict of the jury. Bruce v. Chestnut Farms-Chevy Chase Dairy, 75 U.S. App.D.C. 192, 126 F.2d 224 (1942); United States v. Pleva, 66 F.2d 529 (2d Cir. 1933); Mattice v. Maryland Casualty Co., 5 F.2d 233 (W.D.Wash.1925).

6. We have reviewed appellant's other points of error and have found them to be without merit.