**UNITED STATES of America, Appellee,**

v.

**Dewey Lawrence COBB, Appellant.**

**No. 78–1563.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1978.

Decided Dec. 7, 1978.

Rehearing and Rehearing En Banc
Denied Jan. 12, 1979.

Scott B. Tinsley, Springfield Mo., argued; William H. Wendt, Springfield, Mo., filed brief, for appellant.

Michael A. Jones, Asst. U. S. Atty. (argued) Springfield, Mo., Ronald S. Reed, Jr., U. S. Atty., Kansas City, Mo., filed brief, for appellee.

Before BRIGHT, STEPHENSON, and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

Dewey Lawrence Cobb appeals from his convictions after a jury trial for transporting a stolen motor vehicle in interstate commerce (count I) and knowingly concealing said stolen motor vehicle (count II), in violation of 18 U.S.C. §§ 2312 and 2313 (1976). The district court[1] sentenced Cobb to four years' imprisonment on count I and four years' additional probation on count II. Cobb attacks as error the district court's pretrial rulings which (1) permitted the prosecutor to introduce evidence that Cobb had altered the title certificates of other vehicles in Cobb's possession, (2) allowed the admission into evidence of Cobb's 1966 felony conviction for interstate transportation of a stolen motor vehicle, and (3) permitted the use for impeachment of Cobb's 1949 conviction for that same offense. We affirm the convictions.

I. *Factual Background.*

Cobb operated a business, under the name of Allstate Truck & Equipment Company, in which he purchased and resold used automobiles, trucks, and other motor vehicles. He also purchased vehicles for salvage and engaged in the automobile and truck parts business.

Acting on information that Cobb had altered some motor vehicle title certificates, officers of the Missouri State Highway Patrol and agents of the Federal Bureau of Investigation (FBI) investigated the ownership status of certain motor vehicles in Cobb's possession. The officers discovered that a 1976 Winnebago motor home which Cobb kept at his home in Seneca, Missouri, carried a vehicle identification number (VIN) belonging to a different motor vehicle.

The VIN plate affixed to the Winnebago belonged to a wrecked 1975 Dodge truck which had been purchased for salvage by Tom Gill Truck Parts Company of Houston, Texas. The evidence indicates that some unknown person removed the VIN plate from the 1975 Dodge truck while it was on the Tom Gill Truck Parts lot, between February 28 and April 11, 1977. Cobb had attempted to buy the truck and had access to the lot where it was stored while the truck was in Tom Gill Truck Parts' possession.

The Winnebago motor home in question here was stolen from the residence of Joseph A. Jones at St. Ann, Missouri, on August 21, 1976. Cobb told FBI agents that he purchased the Winnebago around February 1977 from Ron Woods, a friend who was selling it for an unnamed truck driver. Cobb indicated the transaction took place in a motel parking lot near Fort Leonard Wood, Missouri. He testified that, in exchange for the 1976 motor home which was valued between $7,500 and $10,000, he gave Ron Woods a $2,000 cashier's check, $1,000 in cash, and a 1969 truck. Cobb possessed no record of payment except the cashier's check for $2,000, which had been endorsed by both Cobb and Woods. Cobb did not receive a bill of sale or title certificate for the vehicle. Woods, although located by the FBI in Houston, Texas, did not testify in the case.

---

1. The Honorable William R. Collinson, United States District Judge for the Western District of Missouri.

After acquiring it, Cobb kept the Winnebago behind his house for a week or two, and, although the vehicle's original paint job was in good condition, he had it repainted twice. The false 1975 VIN plate was affixed to the Winnebago by aluminum pop rivets, instead of by the stainless steel rivets with a rosette design with which VIN plates are normally manufactured, indicating that the plate had been "reinstalled." A federally required decal, similar to a city sticker and containing the vehicle's date of manufacture and VIN, was missing from the Winnebago. Identification numbers normally found on the frame, engine and transmission of a vehicle could not be found on the motor home.

After his purchase of the Winnebago in Missouri, Cobb drove the motor home to the State of Texas and then returned with it to his home in Seneca, Missouri.

At trial, the Government introduced evidence that Cobb had altered the title certificates on seven vehicles in his possession, although none of those vehicles were established as stolen. Cobb admitted, on direct examination, that he was convicted in 1966 of interstate transportation of a motor vehicle and that he was charged with a similar crime in 1949. On cross-examination by the Government, Cobb admitted that the 1949 charge led to a conviction.

II. *The Evidence of Alteration of Other Title Certificates.*

Prior to the beginning of trial, Cobb filed a "Motion in Limine" asking that the trial court instruct the United States Attorney to refrain from introducing any evidence of

Cobb's admissions to FBI agents that he altered certificates of Missouri titles to fit certain motor vehicles in his possession. The district court denied this motion stating that the pretrial conference and statements of defense counsel had shown that Cobb's principal defense was lack of knowledge that the Winnebago was stolen, and evidence of altering titles bore on Cobb's knowledge of the stolen character of the vehicle. The court also stated that this evidence was relevant to show the reason for the investigation that led to the discovery of the stolen mobile home in Cobb's possession.

During the course of trial the Government introduced the testimony of a Missouri State Highway Patrol officer that Cobb had altered approximately seven title certificates. Cobb did not object to any of this evidence except to request, after the agent had testified, that

the Court instruct the attorney for the government not to go into this history, that is, why the agents approached my client [defendant Cobb], because that has now been covered and testified to by Sgt. Murphy, so it would be repetitious and highly inflammatory to the jury.

The prosecutor indicated he would not ask the history of any additional agent, and the court denied Cobb's request.

██ Because Cobb failed to object during trial to the use of the altered title evidence, we have before us on this appeal only the district court's pretrial ruling refusing to instruct the United States Attorney not to inquire about the altered title certificates.[2]

* * * * * *

2. Cobb did not cite any procedural basis for his preliminary motion asking the court to exclude certain evidence. However, this procedure is apparently authorized by Fed.R.Crim.P. 12(b), which provides in part:

(b) *Pretrial Motions.* Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge.

Rule 12(b) further provides:

The following must be raised prior to trial:

* * * * * *

(3) Motions to suppress evidence[.]

This language of subsection (b)(3), which was added in the 1974 amendments to the rule, is arguably broad enough to encompass Cobb's motion to exclude evidence of the altered title certificates on relevancy grounds. However, the Advisory Committee's Note to the amendment indicates Rule 12(b)(3) was intended only to continue the existing requirement that motions to suppress evidence resulting from improper police practices be brought before trial, and not to extend the requirement to all cases of inadmissibility of evidence on any ground. *See* McCormick, *Evidence* § 180 n.42 (2d ed. Supp.1978). We deem Cobb's pretrial motion

We examine that ruling only on the basis of the information available to the district court at that time.

■■■■ Although evidence of other crimes or criminal conduct is generally inadmissible, such evidence may be admissible in limited circumstances to establish, for example, motive, intent, knowledge, or absence of mistake or accident. *See* Fed.R. Evid. 404(b); *United States v. Jardan,* 552 F.2d 216, 218 (8th Cir.), *cert. denied,* 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977).

At the time of the pretrial ruling at issue, the trial court knew only the general nature of the Government's case, that the Government possessed evidence that Cobb altered title certificates for vehicles in his possession, and that Cobb's primary defense would be lack of knowledge that the Winnebago was stolen. Clearly, evidence that Cobb was sufficiently concerned and knowledgeable about motor vehicle titles to alter several such titles to correspond to vehicles in his possession may be probative of Cobb's intent and knowledge at the time he purchased another motor vehicle without such a title certificate or any other indicia of the seller's ownership. Moreover, we cannot say the trial court erred in its preliminary evaluation that the probative value of the alteration of title evidence was not substantially outweighed by its prejudicial impact.[3] *See* Fed.R.Evid. 403.

On this appeal, Cobb apparently does not dispute the relevance of the evidence of his altering titles on the issue of whether he knew the motor home in his possession was stolen. However, he now asserts that such evidence was inadmissible under *United States v. Clemons,* 503 F.2d 486 (8th Cir. 1974), because the Government failed to establish with clarity and certainty that Cobb participated in and knew the wrongfulness of the title alterations. The record does not support that argument. Cobb in his own testimony admitted he knew the titles were altered in his office and that altering titles was illegal in Missouri. In any event, Cobb failed to preserve any objection to the Government's foundation for the admission of this evidence. Cobb never made such an objection during trial, and his pretrial "Motion in Limine" cannot be said to have raised the foundation issue, which the trial judge could not decide at that stage of the proceeding.

Accordingly, we hold that the trial court did not err in its preliminary ruling allowing the introduction of evidence that Cobb altered certain title certificates.

III. *The Admission of Cobb's Prior Felony Convictions.*

The pretrial record shows that the Government filed a list of Cobb's prior felony convictions and requested that it be allowed to use those convictions as evidence of Cobb's knowledge and intent in purchasing the stolen Winnebago.[4] Cobb filed suggestions in opposition to the Government's request. At a conference prior to trial, the district court ruled that the Government could use Cobb's 1966 conviction under the Dyer Act for interstate transportation of a motor vehicle in its case-in-chief. The court also ruled that the Government could use Cobb's 1949 Dyer Act conviction for impeachment purposes if the defendant took the stand.

A. *The 1966 Conviction.*

■■■ Cobb again relies upon *United States v. Clemons, supra,* in attacking the

---

here as permissive under the general provision of Rule 12(b).

**3.** Had Cobb objected during the trial to the use of this evidence, we would face a somewhat more difficult question.

**4.** This procedure is parallel to that contemplated by Fed.R.Crim.P. 12(d)(1). However, Rule 12(d)(1) deals only with objections to evidence which must be raised prior to trial under Rule

12(b)(3). As we indicated in note 2, *supra,* Rule 12(b)(3) encompasses only evidence obtained in a manner subject to constitutional challenge. That category does not include evidence of Cobb's prior convictions. The procedure followed here appears instead to fall under the general provision of Rule 12(b), that "[a]ny * * * request which is capable of determination without the trial of the general issue may be raised before trial by motion."

trial court's ruling that Cobb's 1966 Dyer Act conviction was admissible.[5]

The 1966 conviction for the same offense charged in count I of the indictment here is clearly countenanced by Rule 404(b) as evidence admissible to show the defendant's "* * * intent, * * * knowledge, * * * or absence of mistake or accident." Fed.R.Evid. 404(b). Because the 1966 conviction was introduced at trial by stipulation, the evidence of such "other crime" was "clear and convincing" under the *Clemons* standard. Moreover, in light of the record as a whole, we cannot say that the danger of unfair prejudice substantially outweighed the probative value of the 1966 conviction.[6] *See* Fed.R.Evid. 403.

Accordingly, we find no error in the district court's preliminary ruling authorizing the Government to introduce into evidence Cobb's 1966 Dyer Act conviction.

## B. *The 1949 Conviction.*

The district court's ruling with respect to Cobb's 1949 Dyer Act conviction presents a more difficult issue. That conviction falls outside the ten-year limitation on the use of a prior conviction for impeachment under

Fed.R.Evid. 609(b),[7] and it was therefore not admissible,

> unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances *substantially outweighs its prejudicial effect.* [Fed.R. Evid. 609(b) (emphasis added).]

Although the 1949 conviction, like the 1966 conviction, was for the same offense charged in count I of Cobb's indictment and was clearly probative on impeachment of Cobb's testimony, we would hesitate to hold that such probative value "substantially outweighed" the prejudicial impact of this twenty-eight-year-old conviction.[8]

However, the trial court's pretrial ruling as to the 1949 conviction must be viewed as merely tentative. That ruling was expressly conditioned on the defendant's taking the stand, which was then uncertain. More importantly, however, Fed.R.Evid. 609(b) clearly contemplates that any final ruling on the admissibility of a more than ten-year-old conviction should rest upon "specific facts and circumstances" developed in the course of the trial which bear on the probative value or prejudicial effect of the conviction in question. Thus,

---

5. An additional ground for attack arguably exists under Fed.R.Evid. 609(b), which provides in part:

 (b) *Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

 Although Cobb relies upon this rule primarily as to the admission of his 1949 conviction, we note that his 1966 conviction occurred on November 9 of that year, and Cobb received a sentence of five years' imprisonment. Assuming without deciding that the ten-year rule of Fed.R.Evid. 609(b) applies to the use of prior convictions as evidence other than for impeachment purposes, Cobb's 1966 conviction appears to fall within the ten-year limitation, because his period of confinement apparently ended less than ten years prior to the date of his trial here in June 1978.

6. At Cobb's request, the trial court made an appropriate voir dire inquiry of the jury as to whether they would be inclined to convict the defendant "simply because a number of years ago, he had a previous conviction for a similar charge * * *." The court also gave a series of instructions properly limiting the jury's consideration of the evidence of Cobb's prior conviction to the issue of Cobb's intent or state of mind. In addition, the court instructed the jury that the conviction should not be considered for any purpose whatsoever,

 * * * unless the jury first finds that the other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused did the particular act charged * * *.

7. *See* note 5 *supra.*

8. This standard under Fed.R.Evid. 609(b) for admission in impeachment of evidence of a conviction falling outside the 10-year limitation is stricter than the standard under Fed.R.Evid. 403, which provides for exclusion of relevant evidence only where the danger of unfair prejudice resulting from the evidence substantially outweighs its probative value.

in ordinary circumstances, a defendant who objects to a pretrial ruling on the admissibility of such an aged conviction ought to assert that objection when the prosecutor seeks to introduce the questioned evidence. The trial court should be afforded an opportunity to rule on the admission of such evidence at the proper time—after the facts and circumstances have been developed at least by the prosecution's case at trial.

In addition, the trial court's conditioned pretrial ruling left open the possibility that the prosecutor might forego the opportunity to use the 1949 conviction in impeachment, thereby avoiding any risk of reversal due to that evidence, if he otherwise had presented a strong case or if he felt the facts and circumstances adduced at trial failed to justify the conviction's probative value as outweighing its prejudicial effect.

Here, Cobb effectively cut off both the prosecutor's privilege to withhold the possibly prejudicial evidence and the court's opportunity to reconsider its preliminary ruling by voluntarily broaching the subject of the 1949 conviction on direct examination. The Government's later reference to the 1949 conviction served only to correct a misimpression created by Cobb's testimony regarding that conviction.[9]

We therefore hold that Cobb failed to preserve his objection to the admission of evidence of the 1949 conviction. By voluntarily testifying to the 1949 conviction, Cobb waived any objection to the trial court's pretrial ruling on that issue.

Affirmed.

**9.** Cobb testified on direct examination that he was convicted in 1966 of interstate transportation of stolen property and that he faced a "similar charge" in 1949. The following exchange occurred between Cobb and his counsel regarding the 1949 charge:

Q Now, you understand—did you enter pleas of guilty or what happened? .
A No, sir, the one that I bought them off of took the Fifth Amendment.
Q You are not taking the Fifth Amendment in this case today, are you? .
A I am not, but the man that I bought it from before—

The Government thereafter, on cross-examination, inquired as follows without objection:
Q I believe you said you have been convicted of two crimes in the past, two felonies; correct?
A That's right.
Q Interstate transportation of a stolen motor vehicle in 1949 and interstate transportation of a stolen motor vehicle in 1966; is that correct?
A It was caused to be transported, which is, you know—
Q You were convicted of them; correct, sir?
A That's right.