**UNITED STATES of America, Appellee,**

v.

**Alfred A. JOHNSON, Appellant.**

**No. 83–1412.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1983.

Decided Nov. 8, 1983.

Certiorari Denied Feb. 21, 1984.
See 104 S.Ct. 1310.

Lay, Chief Judge, dissented and filed opinion.

James M. Rosenbaum, U.S. Atty., by Paul A. Murphy, Asst. U.S. Atty., D. Minn., Minneapolis, Minn., for appellee.

Faegre & Benson by James Duffy O'Connor, Minneapolis, Minn., for appellant.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

HENLEY, Senior Circuit Judge.

Alfred A. Johnson appeals from criminal convictions of conspiracy to distribute and distributing cocaine in violation of 18 U.S.C.

§§ 841(a)(1), 846. Johnson presents two challenges to his convictions. First, he argues that the jury verdict was not unanimous. Second, he contends that the district court improperly denied his motion in limine to prohibit cross-examination on his prior criminal convictions, and that the prosecutor's improper use of the convictions denied him a fair trial. We affirm.[1]

Johnson was indicted on one count of selling cocaine to Maurice Goldstein on June 30, 1981, and on one count of conspiracy to distribute cocaine on July 9, 1981. Goldstein testified that he bought cocaine from Johnson on June 30 and immediately sold it to an acquaintance, Philip Schneiderman, who passed the cocaine on to undercover Drug Enforcement Agency (DEA) Agents Crosby and Leonhart. The DEA agents had "fronted" the money for the purchase. Other DEA agents testified that Johnson came to Goldstein's home June 30. Johnson denied selling cocaine on that night.

On July 9 Crosby and Leonhart gave Goldstein $2800.00 for an ounce of cocaine; Goldstein promised delivery in a few hours. Goldstein testified that Johnson had agreed by telephone to sell an ounce of cocaine, and that he came by Goldstein's house that night and picked up $2500.00. According to Goldstein, Johnson said that he would come back shortly with the cocaine, but Johnson never returned. Johnson testified that on July 9 he decided to "rip off" Goldstein by agreeing to sell cocaine and taking the "front" money. Johnson testified that he had no cocaine to sell and no intention of selling cocaine; rather, he was angry at Goldstein for making sexual advances to Johnson's wife, and the theft was to be his revenge.

Unanimous verdict.

The jury in Johnson's case returned its verdict, finding Johnson guilty on both counts of the indictment. The clerk of court then polled the jury. The first eleven jurors responded affirmatively to the ques-

tion, "Are these your verdicts?" The twelfth juror, Ruby Budd, answered, "Yes, reluctantly." The first eleven jurors were excused and the following exchange took place between the court and Mrs. Budd:

> The Court: You have indicated that your verdict was "reluctantly" reached. Is there any hesitation in your mind about the defendant's guilt?

> Mrs. Budd: Yes, there was, because there was nobody that witnessed it, that they actually saw him pass the cocaine, but I . . .

> The Court: Just a second, that's all I need to know for right now.

The court then stated to counsel his intention of sending the jury back for further deliberations. Neither party objected, though defense counsel's request that the reasonable doubt instruction be given again was denied. Fifteen minutes later, the jury returned and again gave its verdict of guilty on both counts. The jurors were polled individually, and each agreed that the verdict as rendered was their verdict. Mrs. Budd was then questioned by the court:

> The Court: You're satisfied with your verdict?

> Mrs. Budd: Yes.

> The Court: Do you have any hesitancy in your mind about it?

> Mrs. Budd: I did, but not now.

> The Court: You're satisfied that he's guilty beyond a reasonable doubt?

> Mrs. Budd: Yes.

After a discussion with counsel at the bench, the following exchange took place:

> The Court: Do you have any feeling that you want or need more time in order to reach a decision in this case?

> Mrs. Budd: I believed Agent Crosby's statement.

> The Court: You don't feel you need any more time?

---

1. The Honorable Miles W. Lord, Chief Judge, United States District Court for the District of Minnesota, ruled on Johnson's pretrial motions and presided at his trial. Upon agreement of the parties, The Honorable J. Earl Cudd, United States Magistrate for the District of Minnesota, presided when the jury returned its verdict.

Mrs. Budd: No.

The court then discharged the jury.

■ Johnson claims that these colloquies demonstrate the lack of a unanimous verdict. We disagree. At the first hint of a non-unanimous verdict, the court questioned the juror about the verdict and sent the jury back for further deliberations. This was within the court's discretion under Fed.R.Crim.P. 31(a). *Amos v. United States,* 496 F.2d 1269, 1272–73 (8th Cir.), *cert. denied,* 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 140 (1974).

■ Johnson further contends that Mrs. Budd's statement, "I believed Agent Crosby," shows that Mrs. Budd based her verdict on her belief that Johnson was guilty of theft, but not of distributing cocaine, since Agent Crosby's testimony could not support a guilty verdict on the cocaine charges. He supports this assertion with a transcript of a post-trial interview with Mrs. Budd which so states. Johnson relies on *United States v. Pleva,* 66 F.2d 529 (2d Cir.1933), and *Fox v. United States,* 417 F.2d 84 (5th Cir.1969), for the proposition that when a juror never comes into agreement with the verdict, there is, in effect, no verdict at all. *Pleva* and *Fox* are quite different from this case. *Pleva* involved an ill juror who consented to a guilty plea due to concern over his health, and *Fox* involved a juror who remained silent when polled by the clerk. In *Fox* the ambiguity of the juror's verdict was apparent during the polling process when the juror did not affirmatively and unconditionally state his agreement with the verdict. *Fox v. United States,* 417 F.2d at 88. In *Pleva* the ambiguity arose after polling, but before discharge of the jury when the ill juror stated that he would have voted against conviction but for his concern of spending another night without medical treatment. *United States v. Pleva,* 66 F.2d at 532. In this case, Mrs. Budd assured the court several times of the certainty of her decision; there

was no explicit reference to coercion or disagreement prior to the discharge of the jury. Further, the statement, "I believed Agent Crosby," does not raise doubts about the verdict or in any way indicate coercion, duress, or uncertainty. *Amos v. United States,* 496 F.2d at 1273; *United States v. Smith,* 562 F.2d 619, 622 (10th Cir.1977). Even assuming Mrs. Budd did vote to convict Johnson on the basis of his admitted theft,[2] a juror's reasons for his verdict are generally irrelevant and mistake will not result in impeachment of the verdict. *United States v. Schroeder,* 433 F.2d 846, 851 (8th Cir.1970); *see United States v. Weiner,* 578 F.2d 757, 764 (9th Cir.), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978). The jury was correctly instructed, and the verdict was clear and unanimous. Johnson was not denied his right to a unanimous verdict.

Prior convictions.

Johnson's second claim concerns his prior criminal convictions. In 1970 or 1971[3] he was convicted of aggravated assault, and in 1982 he was convicted of unlawful possession of a firearm. Johnson made a motion in limine to prohibit cross-examination on those convictions. The motion was denied by the district court. Defense counsel then brought out the convictions during his direct examination of Johnson. On appeal, Johnson argues that the district court erred under Fed.R.Evid. 609 in denying the motion in limine.

The aggravated assault conviction was more than ten years old. Thus, its admission is governed by Rule 609(b), which provides in pertinent part:

Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later

---

**2.** We note that, contrary to Johnson's protestations, Agent Crosby's testimony did present evidence of Johnson's guilt on the cocaine charges.

**3.** A record of Johnson's conviction was not part of the record. Johnson could not remember in which year he was convicted.

date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

█ Generally, stale convictions do not have much probative value. The rule recognizes this precept and establishes a rebuttable presumption against admissibility. *United States v. Singer,* 660 F.2d 1295, 1300 (8th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982). "Exceptional circumstances" are required before old convictions will be admitted. *Id.* at 1301. We need not reach the issue of whether such exceptional circumstances exist here, because the question was not preserved for review. This court held in *United States v. Cobb,* 588 F.2d 607 (8th Cir. 1978), *cert. denied,* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979), that pretrial rulings on the admissibility of older convictions are "merely tentative." *United States v. Cobb, id.* at 612. The court found that

> Fed.R.Evid. 609(b) clearly contemplates that any final ruling on the admissibility of a more than ten-year old conviction should rest upon "specific facts and circumstances" developed in the course of the trial which bear on the probative value or prejudicial effect of the conviction in question. Thus, in ordinary circumstances, a defendant who objects to a pretrial ruling on the admissibility of such an aged conviction ought to assert that objection when the prosecutor seeks to introduce the questioned evidence.

*Id.* at 612–13. In *Cobb,* as here, defense counsel himself introduced the "questioned evidence" without a more timely ruling by the district court. As we noted in *Cobb,* the defendant

> effectively cut off both the prosecutor's privilege to withhold the possibly prejudicial evidence and the court's opportunity to reconsider its preliminary ruling by voluntarily broaching the subject of the [old] conviction on direct examination . . . . By voluntarily testifying to the [old] conviction, [the defendant] waived

any objection to the trial court's pretrial ruling.

*Id.* at 613. We believe the holding in *Cobb* applies here, and that it precludes our review. *See United States v. Key,* No. 83–1494 (8th Cir.1983).

█ As to the 1982 firearms conviction, Rule 609(a)(1) applies. It provides:

> (a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant . . . .

The district court did not follow the better practice of making an on-the-record finding that the 609(a)(1) balancing test weighed in favor of admitting the conviction, *United States v. Jackson,* 696 F.2d 578, 589 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1531, 45 L.Ed.2d 952 (1983). However, the district court did hold a hearing, and the parties phrased their arguments in terms of prejudice and probativeness. Especially in view of the importance of Johnson's credibility, we do not believe the district court abused its discretion in ruling that Johnson could be cross-examined on the firearms conviction. *Id.; United States v. Spero,* 625 F.2d 779, 781 (8th Cir.1980).

█ Finally, Johnson contends that in cross-examining him, the prosecutor improperly painted him as a man of "bad character, and thus, more likely to commit the crime charged." He argues that this impropriety, combined with questioning about two other convictions, a thirty year-old one for assault and a 1978 conviction reversed on appeal, violated his right to a fair trial. Again, we note that defense counsel brought out these convictions on direct examination. The prosecutor was entitled to cross-examine the witness concerning his testimony. *United States v.*

*Sparrow,* 470 F.2d 885, 888 (10th Cir.1972), *cert. denied,* 411 U.S. 936, 93 S.Ct. 1913, 36 L.Ed.2d 397 (1973); *see United States v. Adcock,* 558 F.2d 397, 402 (8th Cir.), *cert. denied,* 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). Further, this cross-examination was extremely limited, and was followed by adequate instructions from the court concerning the limited relevance of Johnson's prior convictions. In this case, we are persuaded that Johnson was not denied a fair trial. *See United States v. Buchanan,* 659 F.2d 878 (8th Cir.1981).

The judgment of conviction is affirmed.

LAY, Chief Judge, dissenting.

I respectfully dissent from that portion of the majority's opinion which finds that the defendant's "cross-examination was extremely limited" and that the limiting instructions given by the court adequately protected the defendant's right to a fair trial. I feel that the prosecutor's cross-examination went beyond what is allowed under the Rules of Evidence and what should be tolerated by this court.

Rule 609 of the Federal Rules of Evidence permits impeachment of a witness by "evidence that he has been convicted of a crime." Fed.R.Evid. 609(a). Under this rule, the prosecutor was entitled to question the defendant as to the fact of the conviction. However, the prosecutor's repeated questioning on the circumstances of the conviction went beyond mere proof of the crime. It was an attempt to paint Johnson as having a bad character.

In his cross-examination of the defendant, the prosecutor repeatedly emphasized not only the prior conviction but the facts of the crime:

Q. You were convicted again in Minnesota two more times for aggravated assault?

A. One, I said one time in 1970—'70 or '71.

Q. Okay. Did somebody get hurt that time?

A. Yes, sir, somebody did get hurt.

Q. Did a lady get shot in the back?

A. Yes, sir, accidentally.

Q. A bullet got stuck somewhere into her body from behind her, didn't it?

A. It did, right.

Q. You had the gun?

A. It was her gun, sir.

Q. You were convicted of the aggravated assault. Right?

A. Right.

Q. You went to trial on that?

A. Right.

Q. The jury came back and found that you had done that, didn't they?

A. Yes, sir.

Transcript of Trial at 5–8, *United States v. Johnson,* No. Cr. 4–82–90 (D.Minn.1983).

The trial court abetted this unauthorized cross-examination by asking the defendant about his relationship with the victim of the earlier crime. The prosecutor then renewed his attack on the defendant's character by asking "Did you shoot her to protect her (the victim's) honor?" This exchange involving the defendant, prosecutor, and court is unwarranted and unacceptable under Rule 609.

The writer is unaware of any cases in this circuit which have allowed the prosecutor to delve so repeatedly into the facts of a collateral crime. It is fundamentally and prejudicially wrong for the prosecutor to abuse the narrow license of Rule 609. Regardless of guilt or innocence, a defendant is entitled to a fair trial. The paramount interests of the administration of criminal justice so require. I therefore respectfully dissent.